IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **PACIFIC BASIN SG PTE. LTD.** | § | |
| ***Plaintiff*,** | § | |
| | § | **C.A. No. 3:26-cv-298** |
| **v.** | § | |
| | § | **IN ADMIRALTY, Rule 9(h)** |
| **SWISSMARINE PTE. LTD.,** | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT**

Plaintiff PACIFIC BASIN SG PTE. LTD. ("Plaintiff" or "Pacific Basin"), by and through its undersigned attorneys, expressly subject to all rights of arbitration, as and for its Verified Original Complaint against Defendant SWISSMARINE PTE. LTD. ("Defendant" or "SwissMarine"), alleges as follows upon information and belief:

**SUBJECT MATTER JURISDICTION AND VENUE**

1. This is an admiralty or maritime claim within the Court's admiralty jurisdiction pursuant to 28 U.S.C. Section 1333 and within the meaning of Federal Rule of Civil Procedure 9(h). It also arises under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Federal jurisdiction also exists because this action arises under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Section 208, and the Federal Arbitration Act, 9 U.S.C. Section 8.

2. Venue is proper in this Court under 28 U.S.C. Section 1391 in that the property of Defendant, being the bunkers on board the M/V CHEVAL, is or will be

during the pendency of this action within the District and jurisdiction of this Honorable Court.

## PARTIES

3. At all material times, Plaintiff Pacific Basin SG Pte. Ltd. was and still is a company registered in Singapore, with its registered office at 36 Robinson Road, #13-01, City House, Singapore 068877.

4. At all material times, Defendant SwissMarine Pte Ltd, upon information and belief, was and still is a company registered in Singapore, with its headquarters in Singapore.

5. Upon information and belief, the M/V CHEVAL (the "Vessel"), IMO No. 9760110, is registered in the ownership of Maritime Cheval LLC (“Head Owners”), which is named herein as garnishee in respect of the property of Defendant in its possession.

## FACTS

### The Charter Between Pacific Basin and SwissMarine.

6. By charterparty made by way of recap on an amended NYPE form dated on or about 17 June 2026 (the “Charter”), SwissMarine, as disponent owners, time-chartered the Vessel to Pacific Basin, as charterers, with a duration of approximately 70 to 75 days without guarantee.

7. The Charter is governed by English law and provides for the resolution of any disputes arising under the Charter by arbitration in London. See Charter, recap item 11 and cl. 54(b).

8. Clause 2(b) of the Charter warrants that on delivery the Vessel shall be seaworthy and in every way fit to be employed for the intended service.

9. The first sentence of Clause 28 of the Charter warrants the capacity and condition of the Vessel's cargo handling gear. A typed sentence at the foot of Clause 28 provides that where it is practically impossible to load or discharge without the hiring of shore gear, and Charterers so require, Owners shall bear the cost of hiring shore gear.

10. Recap item 7 provides for hire at USD $16,000 per day for the first 77 days on hire and thereafter at USD $21,500 per day, and provides that the first hire instalment is payable without the value of bunkers.

11. Recap item 8 provides that bunker quantities and prices on re-delivery shall mirror those on delivery.

12. The Vessel was delivered into the Charter on or about 18 June 2026.

**The Casualty of 21 August 2026**

13. On or about 20 August 2026, the Vessel arrived at Houston, Texas, and berthed at Dock No. 5, Watco Terminal, for the discharge of a cargo of cement in bags.

14. At approximately 1117 hours local time on 21 August 2026, while the Vessel's No. 4 cargo crane was lifting 12 super sacks of cargo together with a shore spreader, the hoisting wire of that crane parted.

15. The suspended load at the time of failure was approximately 26.04 metric tons, comprising 24 metric tons of cargo and a shore spreader weighing 2.04 metric tons as certified by the terminal. The rated safe working load of the No. 4 crane is 30.5 metric tons.

16. The load and the spreader fell onto a shore trailer and onto the dock, causing damage to the trailer, to the dock and to the terminal's spreader.

17. The hoisting wire fitted to the No. 4 crane at the time of failure was of 4V x 39S + 5FC construction, being four strands of 39 wires per strand with a fibre core, of 33.5 mm nominal diameter, supplied by Guangzhou Sailite Wire Rope Co., Ltd.

18. The crane manufacturer, IHI Corporation, specifies for this crane a hoisting wire rope of 4 x SeS(48) construction, being four strands of 48 wires per strand, with special galvanization.

19. The wire fitted was therefore not of the construction specified by the crane manufacturer.

20. The manufacturer's certificate for the wire fitted states a working load limit of 14.5 metric tons and a proof load of 29 metric tons. It states no minimum breaking load. It states a strength grade of 1960 MPa by reference to a standard whose stated application limit is 1870 MPa. It identifies no test machine, calibration status, test date, test duration, applied load, acceptance criteria, testing laboratory or witnessing surveyor, and the inspector field is blank.

21. The wire was accepted and certified by Nippon Kaiji Kyokai under certificate No. 26ZG-067100CG5-1 dated 15 June 2026 at Guangzhou, three days before delivery of the Vessel into the Charter.

22. Upon information and belief, the failure of the hoisting wire is consistent with the use of a wire not compliant with the manufacturer's specification, and with

manufacturing defect, deterioration, corrosion or mechanical damage, and is not consistent with any suggestion of overloading during cargo operations.

The Unavailability of the Vessel's Cranes

23. Following the casualty the Vessel's No. 4 crane was out of service.

24. The stevedores and terminal operator declined to work the Vessel's Nos. 1, 2 and 3 cranes, citing safety concerns arising from the condition of the hoisting wires and the standard of maintenance of the cranes.

25. Under the longshoring standards of the Occupational Safety and Health Administration, 29 C.F.R. Part 1918, a stevedoring employer shall not use a vessel's cargo handling gear until it has been ascertained that the vessel holds a current and valid cargo gear register and certificates conforming to International Labour Organization Convention No. 152. Any gear found unsafe shall not be used until it is made safe. Moreover, cranes with a visible or known defect that affects safe operation shall not be used. *See* 29 C.F.R. Sections 1918.11(a), 1918.51(b) and 1918.55(a).

26. Upon inspection, the Vessel's Nos. 1, 2 and 3 cranes were found to have a displaced wire guide roller shaft owing to a defective spring balancer, requiring repair before those cranes were reported to be in good working condition.

27. In consequence, the Vessel's cargo handling gear was not available to Plaintiff for the discharge of the cargo, and it was practically impossible to discharge the Vessel's cargo without the hiring of shore gear.

28. In further consequence, Plaintiff was compelled to engage shore cranes in order to continue and complete the discharge of the cargo.

## Plaintiff's Loss to Date

29. The cost of the shore cranes and associated stevedore standby charges is USD $296,058 as invoiced through the Vessel's agent.

30. Plaintiff has further suffered and will suffer loss by reason of its exposure in respect of the shore-side claims arising from the casualty.

31. By reason of the matters set forth above, SwissMarine is, at the very least, in breach of Clauses 2(b) and 28 of the Charter, and Plaintiff is entitled to recover its losses in debt and as damages.

32. Plaintiff put SwissMarine on notice of its claim and demanded payment of the shore crane costs pursuant to Clause 28. SwissMarine has denied liability and has declined to make payment.

## The Bunkers

33. The Charter provides for re-delivery of the Vessel dropping last outward sea pilot Houston.

34. Upon re-delivery, the bunkers remaining on board the Vessel become the property of SwissMarine pursuant to recap item 8 of the Charter.

35. Upon information and belief, upon re-delivery there will be on board the Vessel bunkers being the property of SwissMarine, comprising approximately 1,497.940 metric tons of low sulfur fuel oil and approximately 245.917 metric tons of low sulfur marine gas oil, in the fuel tanks of the Vessel.

36. In the alternative, and upon information and belief, some or all of the fuel presently on board the Vessel is now and has at all material times been the property of

SwissMarine or of another party in the owning chain above Plaintiff, by reason of the structure of recap items 7 and 8, under which the first hire instalment was payable without the value of bunkers and re-delivery quantities and prices mirror those on delivery.

37. Those bunkers are in the possession of Head Owners, by the Master of the Vessel, as garnishee.

**FIRST CAUSE OF ACTION:**
**BREACH OF CHARTER**

38. Plaintiff repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39. Clause 2(b) of the Charter warrants that on delivery the Vessel shall be seaworthy and in every way fit to be employed for the intended service.

40. The hoisting wire on the No. 4 crane had been fitted and certified three days before delivery, did not conform to the crane manufacturer's specification, and on the face of its own certificate had a working load limit incapable of serving the rated capacity of the crane. The Vessel was accordingly not in the warranted condition on delivery.

41. Clause 28 of the Charter warrants the capacity of the Vessel's cargo handling gear and provides that where it is practically impossible to discharge without hiring shore gear, and Charterers so require, Owners shall bear the cost of the shore gear.

42. It was practically impossible to discharge the cargo without the hiring of shore gear, Plaintiff required Owners to bear that cost, and Owners have declined to do so.

43. By reason of the foregoing SwissMarine is in breach of the Charter and Plaintiff has suffered loss and damage presently estimated at not less than USD $296,058, together with interest, costs and attorneys' fees.

## RULE B ALLEGATIONS

44. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 as if fully set forth herein.

45. The requirements of Rule B are met. First, Plaintiff has a valid prima facie admiralty or maritime claim against SwissMarine, being a claim for breach of the Charter. The Charter is a maritime contract because the services provided thereunder primarily relate to the carriage of goods by water.

46. Second, SwissMarine cannot be found within the Southern District of Texas. Plaintiff has caused corporate and registration searches to be conducted and SwissMarine does not appear to be registered to do business, and does not maintain any officer or agent for service of process, within this District.

47. Third, upon information and belief, SwissMarine has, or will have during the pendency of this action, property located within the Southern District of Texas, namely the bunkers on board the M/V CHEVAL, IMO No. 9760110, presently berthed at Dock No. 5, Watco Terminal, Port of Houston, and to be re-delivered to SwissMarine dropping last outward sea pilot Houston.

48. Fourth, there is no statutory or maritime law bar to the attachment.

49. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitrations held pursuant to English law. As best as can presently be estimated, Plaintiff expects to incur attorneys' fees and costs in the arbitration of USD 150,000.

50. Accordingly, Plaintiff seeks to obtain jurisdiction over SwissMarine through attachment of SwissMarine's property within the Southern District of Texas pursuant to Process of Maritime Attachment and Garnishment to be issued against such property pursuant to Rule B, and in order to secure its claim for breach of the Charter.

51. Plaintiff seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching the property of the Defendant within the Southern District of Texas up to the amount of USD 446,058.00, for the purpose of obtaining personal jurisdiction over SwissMarine and to secure Plaintiff's claim as described above.

## ARBITRATION AND APPLICABLE LAW

52. Recap item 11 and Clause 54(b) of the Charter contain an arbitration provision which provides for London arbitration of all disputes and the application of English law.

53. Under 9 U.S.C. Section 208, the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 *et seq.*, apply to actions brought under Chapter 2, 9 U.S.C. Section 201 et seq., the New York Convention, to the extent that the FAA is not in conflict with the New York Convention. There is no conflict between 9 U.S.C. Section 8 and the New York Convention. Under 9 U.S.C. Section 8, a proceeding may be begun by an arrest or attachment "according to admiralty proceedings, and the court shall then have jurisdiction

to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

54. Plaintiff seeks to commence arbitration under the terms of the Charter, pursuant to 9 U.S.C. Section 8, by the attachment of the bunkers on board the M/V CHEVAL according to the usual course of admiralty proceedings, and to obtain security in and of such arbitration for its entire claim, plus interest, costs and attorneys' fees.

55. Plaintiff also specifically reserves all other rights and remedies contained in the Charter, none of which are waived.

**INDEMNITY IN FAVOR OF U.S. MARSHAL**

56. Plaintiff agrees to hold harmless and indemnify the U.S. Marshal and all of its deputies arising from any and all liability as a result of attaching the property of SwissMarine in the Southern District of Texas, specifically including the bunkers on board the M/V CHEVAL.

**CONDITIONS PRECEDENT**

57. All conditions precedent have been satisfied and/or discharged.

58. All and singular, the premises of this Verified Original Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A. That process in due form of law issue against in personam Defendant SwissMarine, citing it to appear and answer under oath all and singular the matters alleged in the Verified Original Complaint;

B. That since Defendant SwissMarine cannot be found within this District pursuant to Rule B of the Supplemental Rules, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment attaching all property, tangible or intangible, in whatever form, of SwissMarine in the Southern District of Texas, including but not limited to the bunkers on board the M/V CHEVAL, IMO No. 9760110, now or during the pendency of this action within the District, in the amount of USD 446,058.00, together with attorneys' fees, costs, expenses and interest;

C. That such process be served upon Maritime Cheval LLC, and upon the Master of the M/V CHEVAL, as garnishee having possession of the said property;

D. That all persons claiming any interest in the same be cited to appear and, pursuant to Rules B and E of the Supplemental Rules, answer the matters alleged in this Verified Original Complaint;

E. That the attached property be condemned and sold pursuant to Supplemental Rule E(9) and that the proceeds of said sale be directed to be placed in the Registry of the Court as security for Plaintiff's claims;

F. That Plaintiff be authorized to serve limited discovery to discover information concerning the ownership of the bunkers on board the M/V CHEVAL and the charterparty chain in respect of the Vessel;

G. That the Court retain jurisdiction over the matter through the London Arbitration, and the confirmation of the arbitration award as a judgment of this Court, including any appeals thereof, and for any further or supplemental proceedings as may be necessary; and

H. That Plaintiff be awarded such other, further and different relief as the Court deems just and proper in law and equity.

Respectfully submitted,

By: */s/ Eugene W. Barr*

Eugene W. Barr
Texas State Bar No. 24059425
Fed I.D. No. 1144784
Email: eugene.barr@roystonlaw.com
Dimitri P. Georgantas
Texas State Bar No. 07805100
Federal I.D. No. 2805
Email: dimitri.georgantas@roystonlaw.com
305 21st Street, Suite 223
Galveston, Texas 77550
Telephone: (409) 763-1623
Facsimile: (713) 225-9945

**ATTORNEYS FOR PLAINTIFF,**
**PACIFIC BASIN SG PTE. LTD.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **PACIFIC BASIN SG PTE. LTD.** *Plaintiff,* | § | |
| | § | **C.A. No. __________** |
| **v.** | § | |
| | § | **IN ADMIRALTY, Rule 9(h)** |
| **SWISSMARINE PTE. LTD.,** *Defendant.* | § | |

**VERIFICATION**

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared Eugene W. Barr, who being duly sworn, deposed and stated as follows:

> "I am an attorney for Plaintiff Pacific Basin SG Pte. Ltd. in connection with the referenced matter. I have read the foregoing Verified Original Complaint and know the contents thereof, and that the same are true to the best of my knowledge, information and belief, based upon documentation and information I received which was provided to me by Plaintiff. The reason that I make this verification instead of Plaintiff is that Plaintiff does not have officers or directors within this District."

[signature]
Eugene W. Barr

SUBSCRIBED AND SWORN to before me on the 4th day of September, 2026.

SYLVIA L. COOPER
My Notary ID # 2652944
Expires January 4, 2028
NOTARY PUBLIC STATE OF TEXAS

Sylvia L. Cooper
Notary Public in and for the
State of Texas

68775:55286695